[Cite as *Sterling Constr., Inc. v. Alkire*, 2017-Ohio-7213.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

|  |  |  |
|---|---|---|
| STERLING CONSTRUCTION, INC., | : | CASE NO. CA2016-12-032 |
| Plaintiff-Appellee, | : | O P I N I O N |
| | : | 8/14/2017 |
| - vs - | : | |
| | : | |
| BRIAN ALKIRE, | : | |
| Defendant-Appellant. | : | |

CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CVH20110196

Thomas Spetnagel, 42 East Fifth Street, Chillicothe, Ohio 45601, for plaintiff-appellee

Eastman & Smith Ltd., Bryan Jeffries, 100 Broad Street, Suite 2100, Columbus, Ohio 43215, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1}   Defendant-appellant, Brian Alkire ("Alkire"), appeals from the decision of the Madison County Court of Common Pleas upon remand from this court in a suit initiated by plaintiff-appellee, Sterling Construction, Inc. ("Sterling").  For the reasons outlined below, we affirm.

{¶ 2}   This matter was previously appealed to this court in *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison Nos. CA2013-08-028 and CA2013-08-030, 2014-Ohio-2897

(hereinafter "*Sterling I*").  As stated in that case, the relevant facts are as follows:

> Sterling is owned by Dave Kohli.  Kohli met Alkire when Alkire was approximately nine years old, and the two shared a friendship that spanned more than 30 years.  At different times throughout their association, Alkire performed work on Kohli's farm and also helped with Kohli's livestock, and Kohli and his construction company performed work for Alkire and Alkire's mother.
>
> In 2009, Alkire expressed his interest in purchasing a home, and consulted Kohli about renovation expenses and financing for the home.  Kohli and Alkire walked through the home prior to Alkire purchasing it, and the two discussed possible remodeling scenarios.  Alkire expressed his desire to see the house updated, and agreed to hire the architect suggested by Kohli in order to make renovation plans.  Kohli later placed Alkire in contact with a financial institution, and Alkire obtained financing and purchased the home.
>
> Before, during, and after Alkire acquired the house, Alkire and Kohli had multiple phone conversations and walk-throughs of the house to discuss how much the renovations would cost.  Kohli estimated that replacing the roof would cost $5,000, adding a porch would cost $10,000, replacing the garage door would be $1,600, replacing vinyl siding would be $3,000 and relocating electrical work would be $2,500.  However, Kohli did not offer estimates for other work that was to be done because Alkire did not request additional estimates.
>
> Kohli and Sterling employees began working on Alkire's house, including replacing the roof, building the porch, replacing windows, and framing the inside of the home to make changes to the kitchen, bathroom, closets, and master bedroom.  After paying a total of $40,000 to Sterling for materials and labor, Alkire and Kohli had some disagreements.  Despite the fact that Sterling had not completed the remodel, Alkire directed Kohli that Sterling was not to come back to his property.  Neither Kohli nor Sterling's employees returned to Alkire's home after being told by Alkire not to come back.  Sterling later informed Alkire that he owed $26,472.18 more for materials and services it had provided.  Alkire refused to make any additional payments to Sterling.
>
> Sterling filed suit against Alkire, claiming unjust enrichment and breach of contract.  Alkire counterclaimed, and alleged breach of contract, unjust enrichment, and multiple violations of Ohio's Consumer Sales Practices Act.  The matter proceeded to a two-day bench trial.  During the trial, the court heard testimony from

> Alkire, Kohli, Rex Cockrell (a Sterling employee), Phyllis Kohli (Kohli's wife and Sterling employee), and Walter Morrow, an expert in matters related to the construction industry.
>
> The trial court found that neither party carried its burden, so that neither party was entitled to judgment on their claims/counter-claims. In so doing, the trial court found that the parties' relationship and informal transaction made the series of events a nontraditional consumer transaction not contemplated by the Consumer Sales Practices Act. The trial court also found that neither party was unjustly enriched, and that there was never a contract between the parties.

*Sterling I*, ¶ 2-7.

{¶ 3} Sterling appealed from the trial court's decision finding that a contract did not exist and that Alkire was not unjustly enriched. Alkire also appealed from the trial court's decision finding that the Ohio Consumer Sale Practices Act ("CSPA") did not apply to the case at bar. In reversing the trial court's decision, this court determined that the trial court erred by finding the CSPA was not applicable. This court also determined the trial court erred by finding the parties had not entered into an implied contract. On remand, the trial court determined that Sterling failed to establish Alkire breached the implied contract between the parties, but found Sterling had committed two violations of the CSPA that entitled Alkire to recover $400 in statutory damages. The trial court further found that, under the totality of the circumstances, awarding Alkire with any attorney fees would be "unequitable."

{¶ 4} Alkire now appeals from the trial court's decision, raising five assignments of error for review. For ease of discussion, Alkire's third, fourth, and fifth assignments of error will be addressed together.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED BY NOT PROPERLY APPLYING ALL OF THE APPLICABLE PROVISIONS OF THE CONSUMER SALES PRACTICES ACT IN

DETERMINING WHETHER ALKIRE WAS ENTITLED TO ATTORNEYS' FEES.

{¶ 7} In his first assignment of error, Alkire argues the trial court erred by finding Sterling only committed two violations of the CSPA, without also finding Sterling violated Ohio Admin.Code 109:4-3-05(D)(3), which addresses when the supplier must obtain authorization from the consumer for price increases regarding any additional, unforeseen, but necessary repairs when the cost of those repairs amounts to ten per cent or more (excluding tax) of the original estimate. We disagree.

{¶ 8} Although couched in a claim regarding attorney fees, Alkire argues the trial court's decision finding Sterling did not violate Ohio Admin.Code 109:4-3-05(D)(3) was against the manifest weight of the evidence. "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case." *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. Thus, in considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20. A judgment will not be reversed as being against the manifest weight of the evidence where the "judgment is supported by some competent, credible evidence going to all essential elements of the case." *Ashburn v. Roth*, 12th Dist. Butler Nos. CA2006-03-054 and CA2006-03-070, 2007-Ohio-2995, ¶ 26, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St. 2d 279 (1978), syllabus.

{¶ 9} There is no dispute that the record fully supports the trial court's decision finding Sterling violated the CSPA by failing to provide Alkire with both a written estimate and a receipt, conduct that violates Ohio Admin.Code 109:4-3-05(A)(1) and Ohio Admin.Code

109:4-3-07(C), respectively. What is in dispute, however, is whether the trial court erred by not finding Sterling also violated Ohio Admin.Code 109:4-3-05(D)(3), a section which provides:

> (D) In any consumer transaction involving the performance of any repair or service it shall be a deceptive act or practice for a supplier to:
>
> * * *
>
> (3) Fail, in those cases where an estimate has been requested by a consumer, and the anticipated cost of the repair or service exceeds fifty dollars, to obtain oral or written authorization from the consumer for the anticipated cost of any additional, unforeseen, but necessary repairs when the cost of those repairs amounts to ten per cent or more (excluding tax) of the original estimate[.]

{¶ 10} As the plain language of Ohio Admin.Code 109:4-3-05(D)(3) indicates, this section only applies to "those cases where an estimate has been requested by a consumer[.]" In this case, Alkire never requested an estimate from Sterling. Therefore, just as the trial court found, it is impossible to apply Ohio Admin.Code 109:4-3-05(D)(3) to the case at bar "because there is insufficient evidence to establish that more than a 10% increase occurred when no original estimate was provided." We find no error in the trial court's decision. Therefore, Alkire's first assignment of error is without merit and overruled.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT ERRED IN CALCULATING ALKIRE'S ACTUAL DAMAGES FOR THE UNDISPUTED CONSUMER SALES PRACTICES ACT VIOLATIONS.

{¶ 13} In his second assignment of error, Alkire argues the trial court erred by finding he had not suffered any actual economic damages resulting from Sterling's two violations of the CSPA, thus limiting Alkire to a total of $400 in statutory damages pursuant to R.C. 1345.09(B). However, just as the trial court found, Alkire failed to prove he suffered any actual economic damages resulting from Sterling's violations. Rather, as the record reveals,

Alkire paid Sterling $40,000 to remodel his house, work that based on Alkire's own expert witness had a value of approximately $44,000. Alkire, therefore, received a windfall of at least $4,000 above what he paid Sterling. As defined by R.C. 1345.09(G), "actual economic damages" means damages for "direct, incidental, or consequential pecuniary losses resulting from a violation of Chapter 1345. of the Revised Code[.]" In turn, because Alkire failed to prove he suffered any actual economic damages resulting from Sterling's two violations of the CSPA, the trial court was correct in awarding Alkire statutory damages of just $400. Accordingly, Alkire's second assignment of error is also without merit and overruled.

{¶ 14} Assignment of Error No. 3:

{¶ 15} THE TRIAL COURT ERRED BY DENYING AN AWARD OF REASONABLE ATTORNEYS' FEES TO ALKIRE.

{¶ 16} Assignment of Error No. 4:

{¶ 17} THE TRIAL COURT ERRED BY FAILING TO STATE A REASONABLE BASIS FOR DENYING ALKIRE'S APPLICATION FOR ATTORNEYS' FREES.

{¶ 18} Assignment of Error No. 5:

{¶ 19} THE TRIAL COURT ERRED BY FAILING TO HOLD A HEARING AND CALCULATE ATTORNEYS' FEES IN ACCORDANCE WITH THE STANDARDS ESTABLISHED BY THE SUPREME COURT OF OHIO.

{¶ 20} In his third, fourth, and fifth assignments of error, Alkire argues the trial court's decision not to award him attorney fees was improper, thereby requiring this matter be reversed and remanded for further proceedings. We again disagree.

{¶ 21} R.C. 1345.09 provides for the award of attorney fees to the prevailing party in an action brought under the CSPA. Specifically, pursuant to R.C. 1345.09(F):

> The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed and limited pursuant to section 1345.092 of the Revised Code, if

- 6 -

either of the following apply:

(1) The consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith;

(2) The supplier has knowingly committed an act or practice that violates this chapter.

{¶ 22} R.C. 1345.09(F), therefore, "allows the trial court, in its discretion, to award reasonable attorney fees for either of the aforementioned reasons." *Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063 and CA2011-06-064, 2012-Ohio-3130, ¶ 85, citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29 (1990). Absent an abuse of that discretion, the trial court's determination of attorney fees will not be disturbed on appeal. *Id.* An abuse of discretion is more than an error of judgment; it means the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Whittle v. Davis*, 12th Dist. Butler No. CA2012-08-169, 2013-Ohio-1950, ¶ 13.

{¶ 23} Although Alkire suggests otherwise, as this court has stated previously, "R.C. 1345.09(F) is permissive, rather than mandatory. Thus, the trial court was not, at any time, required to award attorney fees to [Alkire]." After a thorough review of the record, we find no error with the trial court's decision denying Alkire's request for attorney fees, nor do we find any error by the trial court for not holding a hearing on the same. As noted above, Sterling's two violations of the CSPA did not result in Alkire suffering any actual economic damages. Moreover, as evidenced by Alkire's own expert witness, Sterling performed work that resulted in Alkire receiving a windfall of at least $4,000. Under these circumstances, we simply cannot say the trial court abused its discretion by finding it would be "unequitable" to award attorney fees to Alkire.

{¶ 24} In so holding, we disagree with Alkire's assertion that the trial court's decision not to award him any attorney fees stands in opposition to the public policy behind the CSPA

that would somehow "shock the conscience." That is particularly true here considering Sterling's two violations of the CSPA can be generally attributed to the informal, fluid nature of the parties' dealings. Furthermore, the fact that the trial court noted the long-standing personal relationship between Alkire and Kohli, Sterling's owner, does not run afoul of our decision in *Sterling I* where we stated that "[t]his court has not found any support for the trial court's finding that the CSPA does not apply to situations where the consumer and supplier have a personal relationship or participate in an informal transaction." *Id.* at ¶ 14. Based on our decision in *Sterling I*, the trial court properly applied the relevant portions of the CSPA to the facts and circumstances of this case. Nothing about the trial court's decision constitutes an abuse of discretion. Therefore, finding no error in the trial court's decision, Alkire's third, fourth, and fifth assignments of error are likewise without merit and overruled.

{¶ 25} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.