[Cite as *Barton v. Retherford*, 2018-Ohio-2085.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

JACQUELINE C. BARTON,                    :

    Plaintiff-Appellee,              :              CASE NO. CA2017-12-171

    - vs -                                        :              O P I N I O N
    5/29/2018

                                                     :

TODD R. RETHERFORD,                     :

    Defendant-Appellant.            :

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2016-12-2630

Davidson Law Offices Co., L.P.A., Matthew D. Davidson and David T. Davidson, 127 North Second Street, P.O. Box 567, Hamilton, OH 45011, for plaintiff-appellee

Picard Law Firm, Daniel J. Picard, 110 Old Street, Monroe, OH 45050, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1} Appellant, Todd R. Retherford, appeals from the decision of the Butler County Court of Common Pleas granting a judgment to appellee, Jacqueline C. Barton, following a bench trial. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} Barton and Retherford were married in Dayton, Ohio on October 11, 1988.

After being married for over 25 years, Barton filed for divorce in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida on March 14, 2014. On August 5, 2016, the Florida Circuit Court issued a final judgment of dissolution dissolving the parties' marriage. Although dissolving the parties' marriage, the Florida Circuit Court did not make any decision regarding the distribution of the parties' real or personal property.

**The Documents**

{¶ 3} As discussed more fully below, at the heart of this appeal are two documents Retherford executed during his marriage to Barton.

*Notice of Release of Liability of Marital Debt*

{¶ 4} In the first document entitled "Notice of release of liability of marital debt" and executed on October 14, 2009 ("Notice"), Retherford initially agreed not to hold Barton responsible for any marital debt incurred after September 29, 2009 in consideration for Barton assuming "all of the joint and her individual marital debt, up until September 29, 2009, at which time [she] filed bankruptcy in her name only." Retherford further agreed to share with Barton a one-half interest in the inheritance he was to receive upon his father's death ("Inheritance") "in consideration of the care [Barton] has provided for [his] father during the months of June, July, August, September, 2009 and beyond." According to the Notice, the Inheritance was estimated to consist of "$250,000 home, $100,000 cash at US Bank, $100,000 investment account at Edward Jones," thereby consisting of $450,000 in assets.

*Quitclaim Deed*

{¶ 5} By the second document, a quitclaim deed Retherford executed on November 24, 2010 ("Quitclaim Deed"), Retherford deeded Barton a one-half interest in the real property located at 5742 River Road, Fairfield, Butler County, Ohio ("Property"). It is undisputed that the Property subject to the Quitclaim Deed was Retherford's father's home

described in the Notice as the "$250,000 home" that Retherford received as part of the Inheritance following his father's death on January 15, 2010. Similar to the Notice discussed above, the Quitclaim Deed specifically stated that "valuable consideration" was given for its execution.

**Complaint and Counterclaim**

{¶ 6} On December 6, 2016, Barton filed a "Complaint in Partition" naming Retherford and the Butler County Treasurer as defendants. In support of her complaint, Barton alleged she was the owner of an undivided one-half interest in fee simple in the Property as evidenced by the Quitclaim Deed recorded in Volume 8284, Page 1490 of the Official Records of the Butler County Recorder, whereas Retherford was the owner of the other corresponding undivided one-half interest in fee simple in the Property. Barton further alleged that she and Retherford were unable to agree on the distribution of their respective ownership interests in the Property. As such, Barton requested a judgment of partition in her favor and that the Property "be appraised and sold and the proceeds paid to the parties as their interests may appear;" specifically, one-half to her and the other one-half to Retherford.

{¶ 7} On December 28, 2016, Retherford filed an answer generally denying Barton's claims. Although not part of this appeal, we note that Retherford thereafter filed a counterclaim asking the trial court to award him "one-half of the value of the real property which is subject of this litigation," "the gun which he owned while married," and "one-half of the value of the 401K retirement which [Barton] earned during the marriage." Barton denied these claims in her reply filed on January 12, 2017.

{¶ 8} On January 24, 2017, Barton amended her complaint to include three additional claims against Retherford. The first claim, which Barton entitled "Reasonable Rental Value," requested the trial court award Barton reasonable rental value in the

Property commensurate with her purported undivided one-half interest in fee simple in the Property as evidenced by the Quitclaim Deed. The second claim, which Barton entitled "Breach of Contract," alleged Retherford "failed to fulfill his contractual obligations pursuant to the [Notice]" by not sharing with her a one-half interest in the Inheritance, "including half of the value of the [Property], half of a U.S. Bank account, and half of [an] investment account at Edward Jones." The third claim, which Barton entitled "Intentional Conversion," alleged Retherford had "wrongfully interfered" with her property rights as to the Inheritance, the Property, and her personal property located therein. Retherford denied these claims in his answer filed later that same day.

**The Trial**

{¶ 9} After the trial court denied the parties' competing motions for summary judgment, the matter proceeded to a one-day bench trial held before a trial court magistrate on August 14, 2017. At trial, the magistrate heard testimony from three witnesses, Barton, Retherford, and John Thomas, a realtor working as an independent contractor with Realty First hired by Barton to appraise the reasonable rental value of the Property. The following is a summary of the relevant testimony and evidence presented at the one-day bench trial.

*Barton's Testimony*

{¶ 10} Between 2006 to 2010, Barton and Retherford lived together in Florida. Unfortunately, during the summer of 2009, Barton lost her job. As a result, in June of 2009, Barton agreed to come to Ohio and take care of Retherford's father who was suffering from terminal cancer. This included doing his laundry, driving him to his appointments, buying his groceries, and cooking, among other activities. Shortly thereafter, in September of 2009, Retherford, who had been working at a trucking company in Florida, also lost his job. After Retherford lost his job, Barton returned to Florida to be with the parties' teenage daughter, whereas Retherford went to Ohio to take care of his ailing father.

- 4 -

{¶ 11} In November of 2009, after taking care of his father for approximately one month, Retherford moved his father into a mobile home in Florida that he and Barton had purchased "a couple of miles away from where [they] lived." Once there, Barton testified that "our family cared for [Retherford's father] while he was in Florida until the time of his death in January of 2010." As noted above, Retherford's father, Raymond E. Retherford, passed away on January 15, 2010.

{¶ 12} As it relates to the Notice, Barton testified the Notice was prepared on the advice of her bankruptcy attorney to protect Retherford's interest in the Inheritance "[b]ecause we had both lost our jobs and we couldn't pay our bills." In turn, as required by the terms of the Notice, Barton individually filed for bankruptcy in the United States Bankruptcy Court for the Middle District of Florida to discharge her and Retherford's approximate $85,000 in marital debt. The record indicates Barton individually filed for bankruptcy on October 27, 2009. The marital debt at issue, however, was generally accrued in Barton's name alone. Although not specific, as Barton testified, "[m]ost of [the credit cards] were in my name because [Retherford] couldn't get credit." Thereafter, when asked why she did not list Retherford as a co-debtor in the bankruptcy proceedings, Barton testified that "[she] was the only one that had access to credit."

{¶ 13} Continuing, Barton then testified regarding the Notice as follows:

> [BARTON'S TRIAL COUNSEL]: Okay. And under this agreement you had certain consideration you gave for this agreement. Did you provide that consideration?
>
> [BARTON]: I did.
>
> [BARTON'S TRIAL COUNSEL]: Okay. Did you ever receive what you were supposed to receive under this contract from Mr. Retherford?
>
> [BARTON]: I have not.

Barton also testified as part of her answers on cross-examination:

> One of the reasons that Mr. Retherford wanted me to take a bankruptcy is he was afraid that his inheritance would be used to fulfill the bankruptcy requirements. So in order to do that I had to file separately. So I took on seven years of not being able to get credit in addition to $85,000 in bankruptcy so he didn't have to so that his inheritance would be clear.

Barton further testified that although she could not remember exactly when her bankruptcy was finalized, she knew it was finalized sometime after Retherford executed the Notice on October 14, 2009. The record indicates the bankruptcy was finalized on February 17, 2010.

{¶ 14} After Retherford's father's death, Barton and Retherford moved into the Property "to fix it up and we wanted to make that our home." The Property, however, needed significant work. To that end, Barton testified she and Retherford had to "do everything for that house," including taking out carpet, stripping wallpaper, painting, cleaning, and landscaping. "So we worked constantly there." Several months later, in November of 2010, Barton testified Retherford "surprised" her by presenting her with the Quitclaim Deed that deeded her an undivided one-half interest in fee simple in the Property. After Barton authenticated as true a copy of the Quitclaim Deed she received from Retherford, the following exchange occurred:

> [BARTON'S TRIAL COUNSEL]: Now it states in there for valuable consideration. Do you feel that you gave valuable consideration for that home?
>
> [BARTON]: Absolutely.
>
> [BARTON'S TRIAL COUNSEL]: In the form of what?
>
> [BARTON]: I helped clean the house. I helped make it habitable again. I helped everything with his father, in taking care of his father. It was our home.

{¶ 15} Continuing, Barton then testified that, to her knowledge, nobody forced Retherford to execute the Quitclaim Deed that he presented to her. As for the Property, including her personal property stored therein, Barton testified Retherford gave her ten

boxes of her books, but otherwise refused to allow her into the Property after she filed for divorce. Barton further testified that she had not received any rental income from Retherford for the Property following their divorce on August 5, 2016.

*Retherford's Testimony*

{¶ 16} Retherford did not dispute that he executed both the Notice and Quitclaim Deed during his marriage to Barton. Retherford also did not dispute that the Notice he executed obligated him to share with Barton a one-half interest in the Inheritance he received "in consideration of the care [Barton] has provided for [his] father during the months of June, July, August, September, 2009 and beyond." As Retherford testified, this included Barton doing his father's laundry, driving him to his appointments, buying his groceries, and cooking his food. Retherford further agreed that there was valuable consideration given when he executed the Notice. Specifically, although he later testified that he did not know what the phrase "for valuable consideration" meant, when asked if he agreed that "there was valuable consideration when you signed this document," Retherford testified "Yes."

{¶ 17} Continuing, Retherford acknowledged that he had not paid any rent to Barton for his exclusive use of the Property following their divorce on August 5, 2016. Retherford also denied that he was obligated on any of the parties' marital debt. As Retherford testified:

> [BARTON'S TRIAL COUNSEL]: Okay. Now, sir, at some point in time during your marriage to [Barton] there was substantial debt that the marriage had, correct?
>
> [RETHERFORD]: No, sir.
>
> [BARTON'S TRIAL COUNSEL]: Repeat, I didn't hear you.
>
> [RETHERFORD]: Jackie had.

Retherford also testified:

> [RETHERFORD'S TRIAL COUNSEL]: You heard [Barton]

- 7 -

testify about her bankruptcy and her debts, correct?

[RETHERFORD]: Uh, huh, yes.

[RETHERFORD'S TRIAL COUNSEL]: Were any of those debts yours?

[RETHERFORD]: No.

[RETHERFORD'S TRIAL COUNSEL]: Were you on any of those accounts?

[RETHERFORD]: No.

*Thomas' Testimony*

{¶ 18} Thomas, an expert who has been a licensed realtor in Ohio for 22 years, testified he appraised the Property and found that it had a reasonable rental value of $2,000 per month. Thomas thereafter testified that his opinion regarding the reasonable rental value of the Property would not change even if the renter had to share the Property with someone else. No other testimony or evidence was presented regarding the reasonable rental value of the Property.

**The Trial Court's Decision**

{¶ 19} On August 28, 2017, the magistrate issued a decision finding both the Notice and Quitclaim Deed were legally binding and enforceable contracts supported by valuable consideration, thereby entitling Barton to receive a one-half interest in the Inheritance and Property. As it relates to the Inheritance, however, the trial court determined that Barton was only entitled to $75,000, an amount that is $25,000 less than what would have otherwise been her one-half interest in the Inheritance, since it was undisputed that some of the money was spent renovating the Property "for which no party was able to provide a clear number." The magistrate also found Barton was entitled to receive a one-half share in the reasonable rental value of the Property, or $1,000 a month, commensurate with her one-half interest in the Property from the time of her divorce from Retherford on August 5,

2016 up to when the Property is sold.

{¶ 20} On September 6, 2017, Retherford filed objections to the magistrate's decision, which the trial court denied in a decision issued on December 4, 2017. Specifically, the trial court affirmed the magistrate's decision finding the Notice and Quitclaim Deed were legally binding and enforceable contracts supported by valuable consideration. The trial court also affirmed the magistrate's decision finding Barton was entitled to receive $1,000 a month as reasonable rental value in the Property. Not satisfied with the trial court's decision, Retherford now appeals, raising a single assignment of error for review.

**The Appeal**

{¶ 21} THE TRIAL COURT ERRED BY GRANTING JUDGMENT TO THE APPELLEE.

{¶ 22} In his single assignment of error, Retherford argues the trial court erred by granting judgment to Barton upon finding the Notice and Quitclaim Deed were legally binding and enforceable contracts supported by valuable consideration. In support of this claim, Retherford raises several issues generally challenging the trial court's decision finding valuable consideration was given for the Notice and the Quitclaim Deed, as well as whether Barton was entitled to receive $1,000 a month as reasonable rental value of the Property from the time of their divorce on August 5, 2016 up to when the Property is sold. Retherford further argues in the alternative that, even if consideration was given for the Notice, the trial court's decision to award $75,000 to Barton was error as there was "no basis for this determination." Finding no error in the trial court's decision, we affirm.

**Standard of Review**

{¶ 23} Although not explicit, Retherford's appeal raises a manifest weight of the evidence challenge to the trial court's decision to grant a judgment to Barton. The standard

of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case. *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. In considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20. A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case. *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2016-12-032, 2017-Ohio-7213, ¶ 8.

**Elements of an Enforceable Contract**

{¶ 24} In its most basic form, "[a] contract is generally defined as a promise, or a set of promises, actionable upon breach." *Artisan Mechanical, Inc. v. Beiser*, 12th Dist. Butler No. CA2010-02-039, 2010-Ohio-5427, ¶ 26, citing *Kostelnik v. Helper*, 96 Ohio St.3d, 1, 2002-Ohio-2985, ¶ 16. The essential elements of a contract include "an offer, an acceptance, a meeting of the minds, an exchange of consideration, and certainty as to the essential terms of the contract." *Turner v. Langenbrunner*, 12th Dist. Warren No. CA2003-10-099, 2004-Ohio-2814, ¶ 13. "A valid contract must be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, the consideration to be exchanged, and the price to be paid." *Baird v. Crop Prod. Servs.*, 12th Dist. Fayette Nos. CA2011-03-003 and CA2011-04-005, 2012-Ohio-4022, ¶ 19. "Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, ¶ 16, citing *Irwin v.*

*Lombard Univ.*, 56 Ohio St. 9, 19 (1897). "A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." *Id.*

**Analysis**

{¶ 25} As Retherford noted in his appellate brief, "[t]he issue of consideration permeates this entire appeal." However, after a full and thorough review of the record, we find no error in the trial court's decision finding the Notice and Quitclaim Deed were legally binding and enforceable contracts.

{¶ 26} In so holding, we reject Retherford's claim that the consideration provided for in the Notice was invalid as a matter of law and/or constitutes "past consideration." Rather, as stated by the trial court magistrate, Barton initially agreed to file bankruptcy individually to discharge her and Retherford's approximate $85,000 in marital debt to protect Retherford's interest in the Inheritance. Again, as the record indicates, Retherford executed the Notice on October 14, 2009 with Barton filing bankruptcy on October 27, 2009, a bankruptcy that was thereafter finalized on February 17, 2010. Because the marital debt was generally accrued in Barton's name alone, nothing about this promise implicated Retherford as a co-debtor to Barton's creditors. The decision to file bankruptcy, however, was a joint decision Retherford and Barton entered as a married couple after consulting with a bankruptcy attorney that severely impacted Barton's ability to obtain credit.

{¶ 27} As a further promise in the Notice, Barton also agreed to leave Florida and travel to Ohio to care for Retherford's ailing father, care that Barton continued to provide even after Retherford moved his father to Florida. Specifically, as stated in the Notice, Barton took care of Retherford's father "during the months of June, July, August, September, 2009 and beyond." As noted above, Retherford's father did not pass away until January 15, 2010, well after Retherford executed the Notice on October 14, 2009.

- 11 -

**{¶ 28}** In exchange for these two promises contained within the Notice, Retherford agreed not to hold Barton responsible for any marital debt incurred after September 29, 2009. Retherford also agreed to provide Barton with a one-half interest in the Inheritance he was to receive upon his father's death, an event that we again note occurred on January 15, 2010. As the trial court found, these competing promises contained within the Notice were supported by valuable consideration. We find no error in the trial court's decision. This is because, absent proof of fraud or unfair treatment, none of which is evident here, a court will not explore the sufficiency of the consideration once the presence of consideration is demonstrated. *Sligar v. Kerby*, 12th Dist. Butler No. CA96-10-220, 1997 Ohio App. LEXIS 839, *4 (Mar. 10, 1997), citing *Ford v. Tandy Transp., Inc.*, 86 Ohio App. 3d 364, 384 (4th Dist.1993).

**{¶ 29}** Retherford argues in the alternative that, even if consideration was given for the Notice, the trial court's decision to award $75,000 to Barton was error as there was "no basis for this determination." However, as the trial court found, it is undisputed that some of the Inheritance was spent renovating the Property "for which no party was able to provide a clear number." In turn, since neither Barton nor Retherford provided any evidence as to the exact amount of the Inheritance that went towards renovating the Property, in the interest of fairness, the trial court concluded that $50,000 went into rehabilitating the Property. This is because, as Barton testified, the Property required her and Retherford to "do everything for that house," including taking out carpet, stripping wallpaper, painting, cleaning, and landscaping. Considering the equity likely gained by such extensive renovations to the Property, we find no error in the trial court's decision to award $75,000 to Barton. Retherford's claim in the alternative is without merit.

**{¶ 30}** As it relates the Quitclaim Deed, we find the trial court went well beyond what was necessary to establish its validity. Certainly, as the trial court found, the Quitclaim

Deed was merely the execution of the contractual obligation contained within the Notice. That document, however, was valid on its face as a grant from Retherford to Barton of an undivided one-half interest in a properly described parcel of real estate for valuable consideration having been signed and acknowledged by Retherford before a Notary Public, delivered to Barton, and recorded in the Butler County Recorder's Office.

{¶ 31} Nevertheless, despite language in the Quitclaim Deed specifically stating that "valuable consideration" had been given for its execution, Retherford claims Barton never provided such valuable consideration. However, even then, "[f]ailure of consideration, such as nonpayment of the purchase price, or lack of consideration, is not ground for cancellation of a deed unless there was inequitable conduct at the time of the conveyance." Ohio Real Property Law and Practice § 4.06 (2017); *see also In re Estate of Ault*, 80 Ohio App.3d 399, 402 (12th Dist.1992) ("[c]onsideration is not necessary to validate a deed as between the parties to the transaction, and a validly delivered and accepted deed will not be invalidated due to a failure of consideration"). Retherford never made any such allegation of inequitable conduct here, nor does the record in any way indicate any inequitable conduct took place so as to render the Quitclaim Deed invalid.

{¶ 32} Rather, as the record indicates, after spending significant time and effort rehabilitating the Property by taking out carpet, stripping wallpaper, painting, cleaning, and landscaping, Retherford "surprised" Barton by presenting her with the Quitclaim Deed. Therefore, because the Quitclaim Deed was valid on its face, thereby transferring Barton an undivided one-half interest in fee simple in the Property, Retherford's claim that the Quitclaim Deed cannot now be enforced due to a lack of valuable consideration is without merit.

{¶ 33} We also find no error in the trial court's decision finding Barton was entitled to receive $1,000 a month as the reasonable rental value of the Property from the time of their

divorce on August 5, 2016 up to when the Property is sold. This is because "a co-tenant out of possession is entitled to his [or her] share of the reasonable rental value of the property exclusively used by the other co-tenant." *Modic v. Modic*, 91 Ohio App.3d 775, 779 (8th Dist. 1993).

{¶ 34} Here, the only testimony or evidence presented at trial regarding the reasonable rental value of the Property was that of Thomas who, as a licensed realtor in Ohio for 22 years, testified the Property had reasonable rental value of $2,000 per month. Barton, therefore, as the owner of an undivided one-half interest in fee simple in the Property, was entitled to receive $1,000 a month as reasonable rental value of the Property following her ouster from the Property after the parties' divorce was finalized on August 5, 2016 up to when the Property is sold. Retherford's claims to the contrary lack merit.

**Conclusion**

{¶ 35} In light of the foregoing, having found no merit to any of Retherford's claims raised herein, and because there is competent, credible evidence supporting the trial court's decision to grant a judgment in Barton's favor, Retherford's single assignment of error is without merit and overruled.

{¶ 36} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.