[Cite as *Holloway v. Moritz*, 2019-Ohio-83.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| BRADLEY HOLLOWAY, | : | |
| Appellee, | : | CASE NO. CA2018-04-005 |
| | : | O P I N I O N |
| - vs - | | 1/14/2019 |
| | : | |
| JASON MORITZ, | : | |
| Appellant. | : | |


CIVIL APPEAL FROM WASHINGTON COURT HOUSE MUNICIPAL COURT
Case No. CV11700465

Bradley D. Holloway, 1060 Old Springfield Road, New Holland, OH 43145, appellee, pro se

Finnerty Law Firm, Gregory N. Finnerty, P.O. Box 3801, Dublin, OH 43016, for appellant


**S. POWELL, P.J.**

{¶ 1}   Appellant, Jason Moritz, appeals the decision of the Washington Courthouse Municipal Court, Small Claims Division, granting a monetary judgment of $2,535.70 plus interest to appellee, Bradley Holloway.  For the reasons outlined below, we affirm the trial court's decision.

**Facts and Procedural History**

{¶ 2}   On July 3, 2017, Holloway filed a complaint alleging Moritz breached a "written and verbal agreement" that entitled him to a monetary judgment of $2,950.71 plus interest.

In support of his complaint, Holloway argued Moritz had breached an agreement to reimburse him for tickets and hotel room to a country music festival that took place during the summer of 2017. Holloway alleged Moritz made this promise in exchange for a ticket to a country music concert that took place in 2015. The matter was ultimately tried to the bench on March 26, 2018.

**The Trial**

{¶ 3} The trial court heard testimony from only two witnesses, Holloway and Moritz.

*Holloway's Testimony*

{¶ 4} As alleged in his complaint, Holloway testified Moritz promised on two separate occasions that he would pay for his ticket and hotel room to a country music festival that took place in the summer of 2017 in exchange for Holloway having paid for his ticket to see a country music concert that took place in 2015. According to Holloway, Moritz made these promises without "having any kind of pre-juxtaposition or anything onto it as to being prodded" in any way. Specifically, as Holloway testified, "[Moritz] made a statement at dinner. He said instead of me paying you for [the concert], how about I get you a ticket for [the country music festival]?" Holloway testified that he agreed to these terms as set forth by Moritz.

{¶ 5} Explaining the terms of the agreement further, Holloway then testified:

> I did not reach out and say hey are you still covering me for 2017? It was brought up on his own accord that he said hey I still have you covered in your own room and tickets on one form of communication. On the other one, he said oh I forgot to send that message to you, fully covered, CMA Fest 2017 tickets and hotel save that. He made these statements under his own free will. He was not poked or prodded about them at all and so I would just like him to follow through on the statement that he made.

{¶ 6} Following this testimony, the trial court asked Holloway where he got the idea that Moritz would pay for the tickets and hotel room for the country music festival. Holloway

responded that it was based on text messages and messages he received from Moritz on Facebook. Those messages state, in pertinent part, the following:

Facebook Messages

[MORITZ]: I never sent you the message to you that you need to save

[MORITZ]: Cma Feat 2017 tickets and hotel COVERED FULLY! Save that

[HOLLOWAY]: Lol oh yeah? Ha saving it

Text Messages

[MORITZ]: I still have you covered next year and your room at the hotel your own room I mean

{¶ 7} After not hearing back from Moritz about the upcoming country music festival, Holloway sent a series of text messages to Moritz that stated the following:

[HOLLOWAY]: Hey what's up man? Ready for next week??

[HOLLOWAY]: Got the tickets or hotel yet? Lol

[HOLLOWAY]: So I take it you're not going to reimburse me for [the country music festival], even though you said you'd have me covered?

[HOLLOWAY] Please pay me what you owe me before I take this to court

{¶ 8} Continuing, Holloway then testified that it was his understanding that if Moritz "was to provide a room like he had stated then [he] would cancel the reservation that I made, and stay at the hotel that Mr. Moritz had set up." Specifically, as Holloway testified:

And so, it was my understanding that he would have everything lined up and all of that. And as I stated, when he would come back and say hey, I have your tickets and I have the hotel for you, I would have had time to cancel the hotel. I would have had time to offer the tickets to someone else.

Moritz never provided Holloway with the tickets or a hotel room as promised, items the record indicates ultimately cost Holloway a total of $2,535.70. Concluding, Holloway

testified:

> Just that I'm just trying to get reimbursed for * * * an agreement that was made. First started out as a gentlemen's agreement with him saying he, instead of me paying you for [the concert], let me get this for you.
>
> * *
>
> And then as I stated, he's brought it up, he brought it up on two separate occasions both they were eleven days apart, that he would cover me fully for 2017 and that's all I'm trying to do * * * is get reimbursed for something that he said he would provide for me. He said he would provide a service. He did not follow through with the service. So, I'm seeking reimbursement.

### Moritz's Testimony

{¶ 9} Moritz testified to a different version of events. For instance, as it relates to the agreement to reimburse Holloway for the ticket to the country music concert Holloway provided to him, Moritz testified:

> Two friends went up to a show and we went to dinner. And he, and I brought up you know rather than [paying him back for the ticket], why don't you, you know, check out the [country music festival], come down and I'll you know, get you taken care of.

{¶ 10} However, when asked if he recalled promising Holloway that he would "have him covered" for the country music festival, Moritz testified, "I mean obviously if he got the message that I did, then I would have." But, according to Moritz, by stating he would have Holloway "covered" that simply meant he would provide Holloway with tickets and the hotel room that he would receive as compensation for working at the country music festival. It is undisputed Moritz did not work at the country music festival in the summer of 2017 due to his father being diagnosed with cancer.

{¶ 11} Continuing, Moritz then testified it was "asinine" for Holloway to think he would reimburse him for tickets and hotel room to the country music festival in exchange for Holloway having paid for his ticket to see a different country music concert. This was

because, according to Moritz:

> [MORITZ]: Like I said it would have, would have been through my agreement with the festival. It wouldn't have been paying out anything. I never once said yeah I'll pay, I, I got you covered. You know, it would have been through my agreement I had with the festival but with me not working I obviously didn't have an agreement with the festival.
>
> * *
>
> [MORITZ'S TRIAL COUNSEL]: And your ability to cover anything for [Holloway] was dependent on you being at the festival and having your same arrangement where you get rooms at the festival etcetera?
>
> [MORITZ]: Absolutely.

Moritz, however, never informed Holloway that he would not be attending the country music festival due to his father's cancer diagnosis. This is true even though, as noted above, Holloway sent Moritz several messages asking if he was still going to cover his tickets and hotel room to the upcoming country music festival.

**The Trial Court's Decision**

{¶ 12} After hearing testimony from both Holloway and Moritz, the trial court issued its decision from the bench finding there was an enforceable contract between Moritz and Holloway that Moritz breached by not reimbursing Holloway for the cost of the tickets and hotel room as promised. In so holding, the trial court found Moritz had several opportunities to "avoid this thing" if he would have simply responded to Holloway's messages. However, as noted above, Moritz never informed Holloway that he was unable to attend the country music festival due to his father's cancer diagnosis. The trial court therefore found Moritz in breach of contract and entered and entered judgment in favor of Holloway in the amount of $2,535.70 plus interest.

**Appeal**

{¶ 13} Moritz now appeals from the trial court's decision, raising the following single

assignment of error for review.

{¶ 14} THE TRIAL COURT ERRED WHEN IT FAILED TO DISMISS PLAINTIFF-APPELLEE'S CASE FOR LACK OF CONSIDERATION AS CONSIDERATION IS STILL REQUIRED TO RECOGNIZE A BINDING CONTRACTUAL OBLIGATION.

{¶ 15} In his single assignment of error, Moritz argues the trial court erred by granting a monetary judgment to Holloway since Holloway failed to establish a binding and enforceable contract due to a lack of consideration.  We disagree.

**Standard of Review**

{¶ 16} Although not explicit, Moritz's appeal raises a manifest weight of the evidence challenge to the trial court's decision to grant a monetary judgment to Holloway.  The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case.  *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17.  In considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered.  *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶21, citing *Eastley* at ¶ 20.  A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case.  *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2016-12-032, 2017-Ohio-7213, ¶ 8.

**Elements of an Enforceable Contract**

{¶ 17} In its most basic form, "[a] contract is generally defined as a promise, or a set of promises, actionable upon breach."  *Artisan Mechanical, Inc. v. Beiser*, 12th Dist. Butler

No. CA2010-02-039, 2010-Ohio-5427, ¶ 26, citing *Kostelnik v. Helper*, 96 Ohio St.3d, 1, 2002-Ohio-2985, ¶ 16. The essential elements of a contract include "an offer, an acceptance, a meeting of the minds, an exchange of consideration, and certainty as to the essential terms of the contract." *Turner v. Langenbrunner*, 12th Dist. Warren No. CA2003-10-099, 2004-Ohio-2814, ¶ 13. "A valid contract must be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, the consideration to be exchanged, and the price to be paid." *Baird v. Crop Prod. Servs.*, 12th Dist. Fayette Nos. CA2011-03-003 and CA2011-04-005, 2012-Ohio-4022, ¶ 19.

**Analysis**

**{¶ 18}** As noted above, Moritz argues the trial court erred by granting a monetary judgment to Holloway since Holloway failed to establish a binding and enforceable contract due to a lack of consideration. However, as the record indicates, Moritz promised Holloway on two separate occasions to pay for his ticket and hotel room to a country music festival in 2017 in exchange for Holloway having paid for his ticket to see a country music concert in 2015. As the trial court found, this constitutes valuable consideration to support the trial court's finding Moritz in breach of contract. We find no error in the trial court's decision. This is because, as noted by the Ohio Supreme Court, consideration may consist of either (1) a detriment in the form of a forbearance, loss, or responsibility given, suffered, or undertaken by the promisee, or (2) a benefit consisting of some right, interest, or profit accruing to the promisor. *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, ¶ 16, citing *Irwin v. Lombard Univ.*, 56 Ohio St. 9, 19 (1897). That is exactly what occurred here when Moritz promised Holloway that his tickets and hotel room would be "COVERED FULLY!"

**{¶ 19}** Moritz nevertheless argues that requiring him to reimburse Holloway for tickets and a hotel room to the country music festival in exchange for single ticket to a

different country music concert is inequitable when considering the disparity in price, his own financial situation, and his father's cancer diagnosis. However, as this court has stated previously, absent proof of fraud or unfair treatment, none of which is evidenced here, this court "will not explore the sufficiency of the consideration once the presence of consideration is demonstrated." *Barton v. Retherford*, 12th Dist. Butler No. CA2017-12-171, 2018-Ohio-2085, ¶ 28, citing *Sligar v. Kerby*, 12th Dist. Butler No. CA96-10-220, 1997 Ohio App. LEXIS 839, *4 (Mar. 10, 1997), citing *Ford v. Tandy Transp., Inc.*, 86 Ohio App. 3d 364, 384 (4th Dist.1993). The same is true regarding Moritz's financial situation and his father's cancer diagnosis. Moritz's claim otherwise lacks merit.

**Conclusion**

{¶ 20} The trial court did not err by granting a monetary judgment of $2,535.70 plus interest to Holloway upon finding Moritz in breach of contract. While Moritz may disagree, our decision in this case should not be construed as minimizing Moritz's financial situation or his father's cancer diagnosis. Rather, when considering the facts of this case in relation to the law of this state, there is competent, credible evidence to support the trial court's decision to grant a monetary judgment in Holloway's favor. Therefore, because the trial court did not err by granting a monetary judgment of $2,535.70 plus interest to Holloway upon finding Moritz in breach of contract, Mortiz's single assignment of error is without merit and overruled.

{¶ 21} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.