[Cite as *Skyward Learning Servs., Inc. v. Gray*, 2020-Ohio-1182.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| SKYWARD LEARNING SERVICES, INC. dba SKYWARD ACADEMY, | : | CASE NO. CA2019-08-140 |
| | : | O P I N I O N |
| Appellee, | | 3/30/2020 |
| | : | |
| - vs - | : | |
| | : | |
| ANGELA GRAY, | : | |
| Appellant. | : | |

CIVIL APPEAL FROM BUTLER COUNTY AREA II COURT
Case No. CVF1801078

Skyward Learning Services, Inc. dba Skyward Academy, 9994 Zig Zag Road, Cincinnati, Ohio 45242, pro se

Angela Gray, 2662 Apex Court, Hamilton, Ohio 45011, pro se

**S. POWELL, J.**

{¶ 1} Appellant, Angela Gray, appeals the decision of the Butler County Area II Court granting a monetary judgment to appellee, Skyward Learning Services, Inc. dba Skyward Academy ("Skyward"), in this dispute over unpaid fees Gray allegedly owed to Skyward after Gray withdrew her son from Skyward and enrolled him in another school. For the reasons outlined below, we reverse the trial court's decision.

**No Appellee Brief**

{¶ 2}   We note that while Skyward did file an appellee brief with this court, its brief was thereafter stricken from the record since it was filed on Skyward's behalf by a non-lawyer.  *See Skyward Learning Services Inc. dba Skyward Academy v. Gray*, 12th Dist. Butler No. CA2019-08-140 (Feb. 11, 2020) (Entry Striking Appellee's Brief and Granting Time to File a Motion for Continuance).  When an appellee brief is stricken from the record, it is as if the appellee did not file a brief at all.  Under these circumstances, App.R. 18(C) provides that this court "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."  Whether to accept an appellant's statement of facts and issues as correct under these circumstances is within this court's sound discretion.  *See Moore v. Guyton*, 3d Dist. Paulding No. 11-12-01, 2013-Ohio-143, ¶ 9.   Therefore, exercising our discretion as provided to this court by App.R. 18(C), this court will accept Gray's statement of facts and issues as alleged in her brief in determining this appeal.  *See In re M.J.*, 12th Dist. Fayette No. CA2007-07-026, 2008-Ohio-3217, ¶ 2, fn. 2.

**The Parties**

{¶ 3}   Skyward operates a private school for special needs students that receives capital for its operational costs through a series of scholarship programs.  One of these scholarship programs is the Jon Peterson Special Needs Scholarship.  Parents can use the Jon Peterson Special Needs Scholarship to pay the tuition and fees for their special needs child to attend Skyward.  This is how Skyward receives the majority of its funding to stay in business.  Gray enrolled her son, Joshua, at Skyward for both the 2017-2018 and 2018-2019 school years.  Gray relied on the funds offered to her by the Jon Peterson Special Needs Scholarship to pay for Joshua's tuition to attend Skyward.  Melissa Amrein is the founder and operator of Skyward and also serves as the school's superintendent.

**The Contract**

{¶ 4} Skyward requires a signed contract for each student before the child may be enrolled for any given school year. The contract provides that when a parent enrolls a child at Skyward, it is "assumed" that the child will be enrolled at the school for the entire school year. The contract also states that the parent will be responsible to pay for a full year of attendance of his or her child regardless of whether the student subsequently withdrawals from Skyward. The contract explains that this is necessary given the fact that private schools like Skyward "must make commitments to employ teachers and purchase equipment on an annual basis," which is "contingent on commitments made by those who have contracted for the services." The contract also explains that there is a nonrefundable $300 registration and materials fee charged for all students who enroll at Skyward.

{¶ 5} A parent has the option to cancel the contract and withdraw his or her child from Skyward in accordance with the withdrawal and cancelation policy provided within the contract. As stated in the contract, a parent wishing to cancel the contract and withdraw his or her child from Skyward before the start of the school year must notify Skyward in writing via e-mail or dated certified mail before June 1. A parent canceling the contract before June 1 is not charged any additional cancelation charge. The parent instead forfeits only the $300 nonrefundable registration and materials fee charged for all students who enroll at Skyward. However, a parent wishing to cancel the contract and withdraw his or her child from Skyward on or after June 1, but before the first day of the school year, is charged an additional cancelation fee of $1,000.

{¶ 6} The contract further provides that a parent wishing to cancel the contract and withdraw his or her child from Skyward between the first day of school and September 30 may do so. The contract, however, calls for that parent to be charged 20 percent of the total tuition for the school year. But, after September 30, the contract "may be cancelled by

the parent only at the end of the fiscal quarter, and only by providing Skyward with 30 days written notice prior to the end of that fiscal quarter." The fiscal quarter ending dates for Skyward are December 31 and March 31. Under these circumstances, the contract provides that "[t]uition will be invoiced for that entire fiscal quarter." The contract also provides that "[a]ny fees for services submitted but not reimbursed by the Autism Scholarship or the Jon Peterson Scholarship will become the responsibility of the parent, and the parent will be invoiced accordingly."

**Amrein's Advice to Withdraw**

{¶ 7}   On October 30, 2018, Gray sent an e-mail to Amrein notifying her that she would be withdrawing her son Joshua from Skyward effective immediately. Gray explained that her decision to withdraw Joshua from Skyward came after Amrein had advised her that she should withdraw Joshua from Skyward if she was unhappy with Skyward and its services. This unhappiness, as Gray stated in her e-mail, resulted from her belief that Skyward was neither looking out for Joshua's best interest nor meeting his specific needs. Shortly after learning of Gray's decision to withdraw her son from Skyward, as well as the reasons for his withdrawal, Skyward filed a complaint seeking a monetary judgment against Gray in the amount of $3,626, the amount of unpaid fees for which Skyward had not been reimbursed by the Jon Peterson Special Needs Scholarship after Gray withdrew Joshua from Skyward and enrolled him in another school.

**The Trial**

{¶ 8}   On March 1, 2019, the matter was tried to the bench. Two witnesses testified at trial: Gray and Amrein. As part of her testimony, Gray testified that she withdrew Joshua from Skyward because Amrein "told [her] to take him out" on two separate occasions after it became clear she and Amrein "were no longer on the same page as far as Joshua." Gray also testified that Amrein told her that Joshua was "no longer fit for Skyward Academy," so

"[s]he said, take your son out." Amrein did not deny Gray's allegations. Amrein instead testified and fully admitted that she had told Gray "if you are not happy, go somewhere else." Yet, despite the record indicating Gray was merely following Amrein's advice by withdrawing her son from Skyward and enrolling him in another school, the trial court granted Skyward a monetary judgment against Gray in the requested amount of $3,626. The trial court reached this decision based on the contractual language found within the withdraw and cancellation policy outlined above.

**The Appeal**

{¶ 9} Gray now appeals the trial court's decision. Unfortunately, Gray has not provided this court with any specific assignments of error for review as required by App.R. 16(A)(7). But, notwithstanding Gray not raising any explicit assignments of error, it is nevertheless clear that Gray disagrees with the trial court's decision to grant a monetary judgment to Skyward when she was merely following Amrein's advice by withdrawing her son from Skyward and enrolling him in another school. Under these circumstances, we review the trial court's decision under a manifest weight of the evidence standard. *Holloway v. Moritz*, 12th Dist. Fayette No. CA2018-04-005, 2019-Ohio-83, ¶ 16 (applying a manifest weight standard of review when analyzing a trial court's decision to grant a monetary judgment following a trial in a civil case).

**Standard of Review**

{¶ 10} The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case. *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. In considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and

created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20. A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case. *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2016-12-032, 2017-Ohio-7213, ¶ 8.

**Analysis**

{¶ 11} We find the trial court's decision to grant a monetary judgment to Skyward under these circumstances was against the manifest weight of the evidence. The record indicates that Gray withdrew her son Joshua from Skyward after Amrein advised her on two separate occasions that she should withdraw him from Skyward if she was unhappy with Skyward and its services. Believing that Skyward was neither looking out for Joshua's best interest nor meeting his specific needs, Gray followed Amrein's advice and withdrew Joshua from Skyward and enrolled him in another school. The trial court determined that Gray should pay Skyward $3,626 for relying on Amrein's advice. However, we find Gray should not be punished for following Amrein's advice by acting in what she believed to be her son's best interest. That is to say, a parent like Gray should not be held to account for adhering to the advice provided by the superintendent of his or her child's school. To hold otherwise under these circumstances would ignore what we find to be the clear application of the doctrine of equitable estoppel.

{¶ 12} The doctrine of equitable estoppel "'prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his [or her] detriment.'" *State ex rel. Gmoser v. Village at Beckett Ridge Condominium Owners' Assn., Inc.*, 12th Dist. Butler No. CA2016-02-035, 2016-Ohio-8451, ¶ 31, quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio

St.3d 26, 34 (1994). The effect of this doctrine is to preclude "one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way." *Thompson v. McVey*, 12th Dist. Clinton No. CA2006-03-006, 2006-Ohio-7036, ¶ 14. The doctrine may be employed even where a party is "asserting an otherwise valid right." *A.S. v. Fairfield School Dist.*, 12th Dist. Butler No. CA2003-04-088, 2003-Ohio-6260, ¶ 8, citing *Livingston v. Diocese of Cleveland*, 126 Ohio App. 3d 299, 314 (8th Dist.1998). This is because one of the purposes behind the doctrine of equitable estoppel is to "promote the ends of justice." *Fontaine v. Flexi USA, Inc.*, 12th Dist. Butler No. CA2001-02-047, 2001 Ohio App. LEXIS 5100, *5 (Nov. 13, 2001), citing *Jefferson Place Condominium Assn. v. Naples*, 125 Ohio App. 3d 394, 401 (7th Dist.1998).

{¶ 13} In so holding, we note that Gray did not specifically raise equitable estoppel as a defense before the trial court. That is to say Gray never actually used that precise legal terminology when defending against Skyward's complaint. Gray, however, did raise the basic allegations that are needed to support such a claim on an "information sheet" filed with the trial court, as well as with her arguments presented to the trial court during trial.[1] Therefore, while Gray did not raise equitable estoppel as a defense specifically by name, we find Gray did properly raise it as a defense by arguing she should not be punished for following Amrein's advice to withdraw her son from Skyward and "go somewhere else" if she was not happy with Skyward's services. This is true despite the fact that Gray did not use the precise legal terminology to do so.

{¶ 14} This makes sense when considering this matter was tried in a small claims

---

1. "In order to show a prima facie case of equitable estoppel, one must show (1) a factual representation, (2) that is misleading, (3) that induces actual reliance that is reasonable and in good faith, and (4) that causes detriment to the relying party." *Chase Manhattan Bank v. Parker*, 12th Dist. Butler No. CA2003-11-299, 2005-Ohio-1801, ¶ 20, citing *Heskett v. Paulig*, 131 Ohio App.3d 221, 226-227 (3d Dist.1999).

court. The purpose of a small claims court is to provide a simple, inexpensive, and just way for individuals to resolve small financial disputes with a minimum of legal technicalities. *Bradley v. Talikka*, 11th Dist. Astabula No. 2018-A-0098, 2019-Ohio-1948, ¶ 3. To that end, proceedings in a small claims court "are informal and geared to allowing individuals to resolve uncomplicated disputes quickly and inexpensively." *Cleveland Bar Assn. v. Pearlman*, 106 Ohio St.3d 136, 2005-Ohio-4107, ¶ 15. "The process is an alternative to full-blown judicial dispute resolution" where the parties often appear pro se. *Mandzuch v. Affordable Reasonable Rentals, LLC*, 11th Dist. Geauga No. 2018-G-0179, 2019-Ohio-2092, ¶ 19. Pro se activity is in fact "'assumed and encouraged'" in small claims court. *Beckett v. Wisniewski*, 3rd Dist. Hancock No. 5-09-17, 2009-Ohio-6158, ¶ 14 quoting *Pearlman*. Such is the case here. Therefore, to deny Gray the benefit of the equitable estoppel defense under these circumstances simply because she failed to use legally precise terminology when arguing her case before the trial court would be fundamentally unfair and thwart the purpose of a small claims court.

## Conclusion

{¶ 15} When considering the record properly before this court, we find the trial court's decision to grant a monetary judgment to Skyward was against the manifest weight of the evidence. We find such a decision necessary as it promotes the end of justice, which is a basic tenant underlying the doctrine of equitable estoppel. Such a decision is also necessary due to the limited record before this court in accordance with App.R. 18(C). Therefore, because we find the trial court erred by granting a monetary judgment to Skyward under these facts and circumstances, Gray's argument challenging the trial court's decision to grant a monetary judgment to Skyward is sustained and the trial court's decision is reversed.

{¶ 16} Judgment reversed.

M. POWELL, P.J., and PIPER, J., concur.