[Cite as *Dunn v. Clark*, 2016-Ohio-641.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| CRAIG DUNN, | : | |
| Petitioner-Appellee, | : | CASE NO. CA2015-06-055 |
| | : | O P I N I O N |
| - vs - | | 2/22/2016 |
| | : | |
| ANDREW CLARK, | : | |
| Respondent-Appellant. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 15 CS 3069

Kirby, Thomas & Brandenburg, L.P.A., Brian F. Leurck, 24 Remick Blvd., Springboro, Ohio 45066, for petitioner-appellee

Staton Fischer & Conboy, LLP, James C. Staton, 5613 Brandt Pike, Huber Heights, Ohio 45424, for respondent-appellant

**RINGLAND, J.**

{¶ 1} Respondent-appellant, Andrew Clark, appeals the issuance of a civil stalking protection order in favor of petitioner-appellee, Craig Dunn, by the Warren County Court of Common Pleas. For the reasons outlined below, we affirm.

{¶ 2} The protection order in the present matter was borne out of a "love triangle" between Clark, Clark's ex-wife, and Dunn. Dunn began dating Clark's ex-wife in 2014. On at

least two occasions, Clark told his ex-wife he was going to kill Dunn. The first threat, made in February 2015, consisted of a general statement about killing Dunn ("the February threat"). Clark's ex-wife told Dunn of the threat, but refused to support him in calling the police. As a result, the couple broke up. Clark and his ex-wife rekindled their romance, but the reunion was brief. The ex-wife resumed her relationship with Dunn sometime thereafter.

{¶ 3} The second threat, conveyed by Clark to his ex-wife on April 12, 2015, involved more detail ("the April threat"). Clark contacted his ex-wife while she was at an airport in Detroit on her way to visit Dunn, who was on deployment in New York. Clark stated that Dunn would be "dead in a month," that he knew Dunn's address, and Dunn would know how serious Clark was in two days. Clark told his ex-wife that he was going to visit Dunn's house and shoot Dunn in the head as he was sitting in his car getting ready to leave for work. Then, according to Clark, he would shoot himself. Believing he sounded serious, Clark's ex-wife contacted the police.

{¶ 4} On May 4, 2015, Dunn filed a petition seeking a civil stalking protection order against Clark. The magistrate issued an ex parte protection order and set the matter for a full hearing. Following the hearing, the magistrate granted Dunn's petition for a civil stalking protection order. The trial court adopted the magistrate's decision, and this appeal followed.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE BY GRANTING A CIVIL PROTECTION ORDER CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 7} Clark contends that the trial court's decision granting the civil stalking protection order was against the manifest weight of the evidence. Specifically, Clark challenges the trial court's finding that the two indirect threats, made two months apart, constituted a "pattern of conduct" within the meaning of the menacing by stalking statute. Clark also maintains that

the trial court erred in finding he knew or should have known these comments would cause Dunn to fear he would suffer physical harm or mental distress.

{¶ 8} The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. Manifest weight of the evidence contemplates whether the greater amount of credible evidence presented at trial supports one side of an issue over another. *Id.* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. Determinations regarding the weight of the evidence and the credibility of the witnesses typically lie within the purview of the trier of fact. *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. In resolving conflicts, a reviewing court assesses whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new trial ordered. *Thompkins* at 387.

{¶ 9} With this standard in mind, we turn to the propriety of the trial court's decision granting the civil stalking protection order in the present matter. In accordance with R.C. 2903.214(C)(1), a petitioner may obtain a protection order against a respondent who engages in behavior that constitutes menacing by stalking. The crime of "menacing by stalking" is proscribed by R.C. 2903.211, which provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A)(1). In order to grant a civil stalking protection order, the trial court must find that the elements of R.C. 2903.214 were proven by a preponderance of the evidence. *Wulf v. Opp*, 12th Dist. Clermont No. CA2014-10-074, 2015-Ohio-3285, ¶ 8. Essentially, a preponderance of the evidence signifies that the existence of a contested fact is more probable than its nonexistence. *Id.*

{¶ 10} The elements of R.C. 2903.211(A)(1) at issue in the case at bar are statutorily

defined. A "pattern of conduct" connotes "two or more actions or incidents closely related in time[.]" R.C. 2903.211(D)(1). A perpetrator acts "knowingly" when he or she is aware that their conduct will probably cause a certain result. R.C. 2901.22(B). Finally, the phrase "mental distress" contemplates a mental illness or condition that either causes temporary substantial incapacity or would require treatment by a mental health professional, whether or not help was actually sought. R.C. 2903.211(D)(2). This court has held that the petitioner need not actually suffer physical harm or mental distress. *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 31. Rather, the petitioner's belief that the respondent will cause him physical harm or mental distress is sufficient. *Id.*

{¶ 11} Clark admits to the existence of the April threat only, which is insufficient to constitute a "pattern of conduct" within the meaning of R.C. 2903.211(D)(1). He insists that any other alleged threats were taken out of context and made to look more nefarious than they were in reality. Admittedly, the testimony describing the February threat is sparse. However, the testimony establishes that the February threat was serious enough that Dunn wanted to contact the police. When Clark's ex-wife refused to back him in pursuing legal action, the couple broke off their relationship. These events support the conclusion that the threat was indeed made and taken seriously.

{¶ 12} As stated, a "pattern of conduct" involves two incidents "closely related in time." R.C. 2903.211(D)(1). In deciphering whether two or more incidents are "closely related in time," the trier of fact must examine the totality of the circumstances in each case. *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, ¶ 10-11 (12th Dist.). The two threats upon which the magistrate primarily based her decision to issue the protection order occurred approximately two months apart. This time span is not so remote as to defeat the existence of a "pattern of conduct." *Kruszynski v. Kruszynski*, 5th Dist. Fairfield No. 12-CA-133, 2013-Ohio-3355, ¶ 20.

- 4 -

{¶ 13} Furthermore, the record contains references to other menacing statements made by Clark. According to his ex-wife's testimony, Clark threatened to kill Dunn in multiple emails she received from him. She also testified that, during a phone conversation, Clark told her he envisaged the future newspaper headline "Former Dayton Cop Kills Airforce Member," indicating himself and Dunn. These additional hostile statements bolster the conclusion that the two primary threats cited by the magistrate constitute a pattern of conduct within the meaning of the statute. *Jones* at ¶ 9-11.

{¶ 14} Next, Clark disputes knowing that his ex-wife would relay the threats back to Dunn. The fact that Clark did not issue the threats directly to Dunn does not defeat the mens rea element of the offense. The plain language of R.C. 2903.211 does not require that the threats be made directly to the victim. Indisputably, Clark was aware Dunn was in an intimate relationship with Clark's ex-wife. It can thus be inferred that he knew or reasonably should have known she would tell her boyfriend about threats against his life. *See State v. McWilliams*, 5th Dist. Stark No. 2011-CA-00051, 2012-Ohio-663, ¶ 23. Furthermore, according to testimony proffered by the ex-wife, Clark verbally noted that she and Dunn had broken up the last time he threatened to harm Dunn. This evinces Clark's knowledge of the open line of communication, and that any threats he conveyed to his ex-wife would be relayed to Dunn.

{¶ 15} Finally, Clark contends that his alleged threats were insufficient to cause Dunn to believe Clark would cause him physical harm or mental distress. Clark made multiple references to killing Dunn. Clark's ex-wife, who had known him for 13 years, believed he was capable of hurting Dunn and sounded serious about his intentions to do so. The detail in which Clark described the April threat indicates that he had given the matter some thought and may have been formulating a plan. Dunn testified that, after hearing this threat, he felt compelled to scan the street every morning before exiting the house. He was late to work

one day because an unknown car was parked in front of his house, and he was too afraid to leave until the car departed. This behavior accords with a finding that Dunn feared Clark would cause him physical harm or mental distress.

{¶ 16} Clark emphatically questions the credibility of the testimony proffered by his ex-wife and Dunn in support of the protection order. Both parties proceeded pro se at the evidentiary hearing. It is clear that Clark does not get along with his ex-wife or Dunn. The transcript of the hearing is rife with quarreling and attempts to raise injurious issues that were collateral to the immediate proceeding. Clark portrayed his ex-wife as a serial cheater and consummate liar. He expressed his concern that her true motivation in testifying against him was to hinder his attempt to pursue increased custody over the couple's two children in another proceeding. We emphasize that the magistrate was in the best position to address the credibility of the witnesses. As the Ohio Supreme Court observed:

> The fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.

*State v. Thompson*, 127 Ohio App.3d 511, 529 (8th Dist.1998).

{¶ 17} After thoroughly reviewing the record, we do not find that the magistrate lost her way in resolving any credibility issues and created such a manifest miscarriage of justice that the civil stalking protection order must be overturned. *Thompkins*, 78 Ohio St.3d at 387. We hold that the trial court's decision granting Dunn a civil stalking protection order against Clark was not against the manifest weight of the evidence. There was sufficient credible evidence to prove by a preponderance of the evidence that Dunn was entitled to relief. *Fouch v. Pennington,* 12th Dist. Clermont No. CA2011-10-075, 2012-Ohio-3536, ¶ 9. Accordingly,

Clark's sole assignment of error is overruled.

**{¶ 18}** Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.