[Cite as *Mather v. Hilfinger*, 2021-Ohio-2812.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| KELLY MATHER, | : | |
| Appellee, | : | CASE NO. CA2020-12-083 |
| | : | O P I N I O N |
| - vs - | | 8/16/2021 |
| | : | |
| SHAUNA WANG WALKER HILFINGER, | : | |
| Appellant. | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20-CS-3909


Engel & Martin, LLC, and Anne L. Tamashasky, for appellee.

Bradley R. Hoyt, for appellant.


**S. POWELL, J.**

{¶ 1} Appellant, Shauna Wang Walker Hilfinger, appeals the decision of the Warren County Court of Common Pleas granting appellee, Kelly Mather, a civil stalking protection order against her in accordance with R.C. 2903.214(C)(1). For the reasons outlined below, we affirm the trial court's decision.

**The Parties**

{¶ 2}   Mrs. Mather lives on Ivy Grove Place in Deerfield Township, Warren County, Ohio with her husband, Michael, and their youngest son, Shawn.  Hilfinger is the Mathers' next-door neighbor who also lives on Ivy Grove Place in Deerfield Township, Warren County, Ohio.

**Mrs. Mather's Petition for a Civil Stalking Protection Order Against Hilfinger**

{¶ 3}   On July 20, 2020, Mrs. Mather filed a petition seeking a civil stalking protection order against Hilfinger pursuant to R.C. 2903.214(C)(1).  Mrs. Mather named both her husband, Michael, and her youngest son, Shawn, as additional protected persons in her petition.  In support of her petition, Mrs. Mather alleged that on July 17, 2020, three days prior to filing the petition, Hilfinger had started an "altercation" with her and her husband, Michael.  Mrs. Mather alleged that following this "altercation" that Hilfinger "phoned the police and lied about the events."  Mrs. Mather also alleged that later that night, at 11:39 p.m. on the night of July 17, 2020, Hilfinger "started shining a bright light" into her and her husband's "bedroom window waking us."  Mrs. Mather further alleged that approximately two hours later, at 1:59 a.m. on the morning of July 18, 2020, Hilfinger pulled her car out of her garage and "remotely beeped her horn, waking us once again."  Mrs. Mather additionally alleged that Hilfinger had engaged in this type of conduct "ALL THE TIME" and that Hilfinger's behavior has caused her "stress & undue torturing."  (Capitalization sic.)

**Full Hearing on Mrs. Mather's Petition for a Civil Stalking Protection Order**

{¶ 4}   On September 4, 2020, a full hearing on Mrs. Mather's petition for a civil stalking protection order was held before a trial court magistrate.  During this hearing, the magistrate heard testimony from two witnesses in support of Mrs. Mather's petition: Deputy Kevin Wagner with the Warren County Sheriff's Office and Mrs. Mather's husband, Michael.  Mrs. Mather did not herself testify at this hearing.  The following is a summary of the

testimony offered by Deputy Wagner and Mr. Mather at this hearing.[1]

*Deputy Wagner's Testimony*

{¶ 5} Deputy Wagner testified that he was dispatched to the Mathers' residence on July 17, 2020 at approximately 11:48 p.m. on a "neighbor trouble call." Deputy Wagner testified that upon his arrival at the scene, he initially spoke with Mr. and Mrs. Mather. Deputy Wagner testified that during this conversation, the Mathers told him that Hilfinger had been doing "things to just subtly try and harass them" for "quite a while," such as Hilfinger leaving her lawnmower out, unattended, and running in her driveway, as well as Hilfinger shining flashlights into the Mathers' bedroom window. Deputy Wagner testified that the Mathers were able to substantiate their claims against Hilfinger via video surveillance footage taken from their home security camera.

{¶ 6} Deputy Wagner testified that after speaking with Mr. and Mrs. Mather, he then went next door and spoke to Hilfinger. Deputy Wagner testified that following his conversation with Hilfinger that he went back to the Mathers' home and advised the Mathers that there was "very limited amount of things" that he could do "unless it's a protection order." Deputy Wagner testified that he then left the scene and resumed his patrol duties.

{¶ 7} Deputy Wagner testified that several hours later, on July 18, 2020 at around 2:00 a.m., he was dispatched back out to the Mathers' residence. Deputy Wagner testified that upon his arrival back at the scene that he again spoke with Mr. and Mrs. Mather. Deputy Wagner testified that during this conversation, the Mathers told him that they "were at their wit's end with everything" after Hilfinger had moved her car out of her garage and began "pressing like the double-lock button on her car remote, causing the car horn to go

---

1. Hilfinger also testified at the full hearing on Mrs. Mather's petition for a civil stalking protection order. The trial court, however, found the vast majority Hilfinger's testimony denying Mrs. Mather's allegations lacked credibility.

off * * *." Deputy Wagner testified that the Mathers told him that Hilfinger was causing her car horn to go off "periodically. Not – not continuously, just kind of periodically –, * * * every maybe 10 minutes or so."

{¶ 8} Deputy Wagner testified that after speaking with the Mathers, he left the scene and began driving away. Deputy Wagner testified, however, that while he was driving away that he heard Hilfinger honk her car's horn. Deputy Wagner testified that he then heard Hilfinger honk her car's horn again "[a]bout 20 minutes later" while he was parked down the street approximately 200 feet away from the Mathers' home. Deputy Wagner testified that after hearing Hilfinger's car horn honk a second time, he returned to the scene and knocked on Hilfinger's door. Deputy Wagner testified that he got no response from Hilfinger. Deputy Wanger testified that he still got no response from Hilfinger even after making it known that he was a police officer.

{¶ 9} Concluding, Deputy Wagner testified about the Mathers' state of mind that evening. This included Deputy Wagner testifying about whether he believed the Mathers seemed "under distress" that night. As Deputy Wagner testified:

> Under distress, maybe not. But definitely stressed, as far as – you know, they were just wanting all this kind of [to] end and – and stop. You know, I – they seemed at their wit's end, as far as – you know, losing sleep and – and things like that.

*Mr. Mather's Testimony*

{¶ 10} Mr. Mather testified that "a lot of things have just built up over time" between he, his wife, and Hilfinger. Mr. Mather testified, however, that the straw that finally broke the camel's back occurred on the evening of July 17, 2020 and into the early morning hours of July 18, 2020 when Hilfinger shined a bright light into he and Mrs. Mather's bedroom window and then, several hours later, woke them up every ten minutes by causing her car's horn to periodically honk. Describing these events further, Mr. Mather testified that Hilfinger

shining the bright light into the Mathers' bedroom "lit [their] room up like it was daylight" and "scared the heck out of us, like what is going on –."  Mr. Mather also testified that Hilfinger shining the bright light into the bedroom "upset" them and "literally put so much fear into us, that we're like -- * * * -- we're at our wit's end now."

{¶ 11} Mr. Mather testified that Hilfinger's conduct towards him and his wife had caused both his and Mrs. Mather's anxiety and stress levels to rise.  Mr. Mather also testified that Hilfinger's conduct had "caused a tremendous amount of mental distress" on him and Mrs. Mather.  Mr. Mather testified that this included both he and Mrs. Mather changing their schedules in an effort to avoid having contact with Hilfinger.  Mr. Mather also testified that Hilfinger's conduct towards them was "terrible" and that Hilfinger's conduct had caused Mrs. Mather to begin losing her hair.

{¶ 12} Concluding, Mr. Mather testified about the impact that Hilfinger's conduct had on his and Mrs. Mather's marriage, as well as his and Mrs. Mather's daily lives.  As Mr. Mather testified:

> Well, it's – it's – it's put a tremendous stress on our marriage. It's put a tremendous stress just on daily living.  Where – where [are] we going?  Are we going to sit outside?  You know, just – you know, think about going out to get the mail. * * * I mean, we look just to make sure [Hilfinger's] garage doors are shut before we even go get the mail.  I mean, it's – it's had a tremendous impact on – on all facets.

**Magistrate's Decision**

{¶ 13} Following this hearing, the magistrate issued a decision granting Mrs. Mather's petition for a civil stalking protection order against Hilfinger naming both Mrs. Mather's husband, Michael, and youngest son, Shawn, as additional protected persons.  In so holding, the magistrate stated within its decision the following:

> The Court hereby makes the following findings of fact: THAT ON MORE THAN TWO OCCASIONS IN EARLY AND MID 2020, MOST NOTABLY JULY 17-18 2020, RESPONDENT

KNOWINGLY CAUSED PETITIONER'S HOUSEHOLD TO SUFFER AND TO FEAR MENTAL DISTRESS BY A PATTERN OF DELIBERATELY DISRUPTING THEIR SLEEP BY SHINING A STRONG FLASH LIGHT INTO THEIR BEDROOM WINDOW, WHICH [MR. MATHER] TESTIFIED STARTLED THEM FROM SLEEP, AND BY A SERIES OF INTERMITTENT BEEPS FROM HER CAR, SPANNING THE EARLY HOURS AFTER MIDNIGHT, WITH THE EVIDENCE PURPOSE TO DISTURB HER NEIGHBOR'S SLEEP.

(Capitalization sic.)

**Trial Court's Decision Overruling Hilfinger's Objection to the Magistrate's Decision**

{¶ 14} On September 15, 2020, Hilfinger filed an objection to the magistrate's decision. After taking the matter under advisement, the trial court denied Hilfinger's objection in a decision issued on November 12, 2020. In reaching this decision, the trial court stated:

> [T]he transcript demonstrated that [Hilfinger] engaged in a pattern of behavior over the evening of July 17 [and] into the morning of July 18 – namely, shining a flashlight into [Mr. and Mrs. Mather's bedroom] window and, hours later, repeatedly causing her car alarm to sound by pressing the lock button on her key fob – and that is what the magistrate found to satisfy the statutory requirement of a "pattern of conduct." The statute requires two or more incidents of menacing in a close proximity of time. There is nothing to indicate that the magistrate erred in her application of the law to the facts presented in the hearings. Based upon a thorough and independent review of the record in this case, the Court finds that the magistrate was in the best position to evaluate the credibility of the witnesses in this case as they gave testimony.

{¶ 15} Hilfinger now appeals the trial court's decision granting Mrs. Mather's petition for a civil stalking protection order against her in accordance with R.C. 2903.214(C)(1). In support of her appeal, Hilfinger raises four assignments of error for review. For ease of discussion, and because they are interrelated, we will address Hilfinger's first and second assignments of error together.

**Standard of Review for a Civil Stalking Protection Order**

{¶ 16} The trial court must find that the elements of R.C. 2903.214(C)(1) were proven by a preponderance of the evidence in order to grant the petitioner a civil stalking protection order. *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 9. That means "[a] preponderance of the evidence standard applies to the trial court's decision granting a civil stalking protection order." *Cutler v. Reed*, 12th Dist. Butler No. CA2015-06-105, 2016-Ohio-1151, ¶ 28, citing *Henry v. Coogan*, 12th Dist. Clermont No. CA2002-05-042, 2002-Ohio-6519, ¶ 15. "Preponderance of the evidence" means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence. *Eckstein v. Colian*, 7th Dist. Columbiana No. 11 CO 22, 2012-Ohio-4038, ¶ 14. Therefore, "[w]hen assessing whether a civil stalking protection order should have been issued, the reviewing court must determine whether there was sufficient credible evidence to prove by a preponderance of the evidence that the petitioner was entitled to relief." *Fouch v. Pennington*, 12th Dist. Clermont No. CA2011-10-075, 2012-Ohio-3536, ¶ 9. This standard is, in essence, a review as to "whether the issuance [of the protection order] was against the manifest weight of the evidence." *McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶ 10.

{¶ 17} "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case." *Almoari v. Almajali*, 12th Dist. Butler No. CA2019-11-187, 2020-Ohio-4349, ¶ 69, citing *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. In considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v.*

*House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20. "A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case." *McGrady v. Muench*, 12th Dist. Warren No. CA2018-12-145, 2019-Ohio-2677, ¶ 14, citing *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2016-12-032, 2017-Ohio-7213, ¶ 8.

**Hilfinger's Assignments of Error Nos. 1 and 2:**

{¶ 18} THE TRIAL COURT ERRED IN THAT THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT THE DEFENDANT CAUSED PETITIONER TO SUFFER AND TO FEAR MENTAL DISTRESS.

{¶ 19} THE TRIAL COURT ERRED AND PREJUDICED THE DEFENDANT BY FINDING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT THE DEFENDANTS [sic] NOISE AND LIGHT CAUSED MENTAL DISTRESS.

{¶ 20} In her first and second assignments of error, Hilfinger argues the trial court erred by finding the petitioner, Mrs. Mather, had proven by a preponderance of the evidence that her actions had caused Mrs. Mather "to suffer and to fear mental distress." We disagree.

{¶ 21} As noted above, Mrs. Mather filed her petition for a civil stalking protection order against Hilfinger in accordance with R.C. 2903.214(C)(1). Pursuant to that statute, the issuance of a civil stalking protection order "requires the petitioner to establish that the respondent engaged in conduct constituting menacing by stalking." *Harnar v. Becker*, 12th Dist. Warren No. CA2020-10-068, 2021-Ohio-784, ¶ 6, citing *Lane v. Brewster*, 12th Dist. Clermont No. CA2011-08-060, 2012-Ohio-1290, ¶ 18. The phrase "menacing by stalking" means engaging in a pattern of conduct that knowingly causes another "to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the

other person * * *." R.C. 2903.211(A)(1). "Explicit threats are not necessary to establish menacing by stalking under R.C. 2903.211." *Bartells v. Bertel*, 12th Dist. Butler No. CA2016-11-216, 2018-Ohio-21, ¶ 56, citing *Lundin v. Niepsuj*, 9th Dist. Summit No. 26015, 2014-Ohio-1212, ¶ 19.

{¶ 22} The term "mental distress" is defined by R.C. 2903.211(D)(2) to mean:

> (a) Any mental illness or condition that involves some temporary substantial incapacity;
>
> (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

{¶ 23} "Mental distress need not be incapacitating or debilitating." *Joy v. Letostak*, 10th Dist. Franklin No. 14AP-1040, 2015-Ohio-2667, ¶ 25. Expert testimony is also "not required to demonstrate that a petitioner has suffered from mental distress." *Coleman v. Razete*, 1st Dist. Hamilton No. C-180232, 2019-Ohio-2106, ¶ 24, citing *Smith v. Hein*, 1st Dist. Hamilton No. C-140529, 2015-Ohio-2749, ¶ 9. It is instead the "duty of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's actions." *Fouch*, 2012-Ohio-3536 at ¶ 13, citing *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, ¶ 7 (12th Dist.). In making this determination, the trial court "may rely on its knowledge and experience in determining whether mental distress has been caused." *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, ¶ 18 (4th Dist.). Therefore, "while mental distress need not be shown to any level of professional certainty," mental distress must nevertheless "be proven by facts introduced at trial and the reasonable inferences springing from those facts." *Cleveland Hts. v. Lewis*, 8th Dist. Cuyahoga No. 79511, 2002-Ohio-2736, ¶ 22.

{¶ 24} Hilfinger argues the trial court erred by finding Mrs. Mather had proven by a

preponderance of the evidence that her actions caused Mrs. Mather "to suffer and to fear mental distress" since Mrs. Mather, as the petitioner, did not herself testify at the final hearing in support of her petition for a civil stalking protection order. However, while it may make it more difficult for the petitioner to meet his or her burden of proof, there is no requirement mandating the petitioner testify before the trial court may issue a civil stalking protection order under R.C. 2903.214(C)(1). This holds true so long as each element necessary to obtain the order can be proven by a preponderance of the evidence. This makes sense when considering the possibility that the mental distress caused by the respondent's conduct could, but not necessarily would, render the petitioner severally incapacitated and/or debilitated, thereby preventing the petitioner from testifying in support of his or her petition. This also makes sense when considering a contrary holding would encourage far more egregious behavior from the would-be respondent in hopes that the petitioner would suffer significantly more mental distress so that he or she would be unable to testify against the respondent in the future. That is certainly not what the General Assembly intended through the passage of R.C. 2903.214(C)(1).

{¶ 25} After a full and thorough review of the record, we find there was ample evidence presented to support the trial court's decision finding Hilfinger's conduct caused Mrs. Mather to suffer mental distress. This includes Deputy Wagner's testimony that Hilfinger's conduct late on the night of July 17, 2020, and the early morning hours of July 18, 2020, "definitely" caused both Mr. Mather and Mrs. Mather to suffer from "stress." This also includes Deputy Wagner's testimony that the Mathers "seemed at their wit's end" due to their "losing sleep" and "things like that." This is in addition to Mr. Mather testifying that Hilfinger shining a bright light into the bedroom "lit [their] room up like it was daylight" and "scared the heck out of [them], like what is going on –." Mr. Mather further testified that Hilfinger shining a bright light into the bedroom "upset" them and "literally put so much fear

into us, that we're like -- * * * -- we're at our wit's end now."

{¶ 26} Mr. Mather also testified that Hilfinger's conduct had caused both his and Mrs. Mather's anxiety and stress levels to rise and that "it's caused a tremendous amount of mental distress on us" that "[i]t's terrible." This was in addition to Mr. Mather's testimony that Hilfinger's conduct had caused he and Mrs. Mather "tremendous stress on [their] marriage," as well as a "tremendous stress just on daily living." Mr. Mather further testified that Hilfinger's conduct had caused Mrs. Mather to begin losing her hair. This evidence, if believed, was more than sufficient to warrant the issuance of a civil stalking protection order pursuant to R.C. 2903.214(C)(1). Therefore, because we find no error in the trial court's decision finding the petitioner, Mrs. Mather, had proven by a preponderance of the evidence that Hilfinger's actions had caused her to suffer "mental distress" as that term is defined by R.C. 2903.211(D)(2), Hilfinger's first and second assignments of error lack merit and are overruled.

**Hilfinger's Assignment of Error No. 3:**

{¶ 27} THE TRIAL COURT ERRED AND PREJUDICED THE DEFENDANT BY FINDING THAT THE DEFENDANT ACTED KNOWINGLY TO CAUSE PETITIONER TO SUFFER AND TO FEAR MENTAL DISTRESS.

{¶ 28} In her third assignment of error, Hilfinger argues the trial court erred by finding she "acted knowingly" to cause Mrs. Mather to suffer mental distress. However, as the record indicates, it is clear that Hilfinger intentionally shined a bright light into the Mathers' bedroom window late at night and, hours later, repeatedly caused her car horn to sound by pressing the lock button on her key fob. Despite Hilfinger's claims, there is no question that Hilfinger engaged in such conduct knowing that her conduct would cause Mrs. Mather, if not also Mrs. Mather's husband, Michael, and her youngest son, Shawn, to suffer mental distress. That was, in fact, the entire point of Hilfinger engaging in such behavior.

- 11 -

Therefore, because we find no error in the trial court's decision finding Hilfinger "acted knowingly" to cause Mrs. Mather to suffer mental distress, Hilfinger's third assignment of error also lacks merit and is overruled.

**Hilfinger's Assignment of Error No. 4:**

{¶ 29} THE TRIAL COURT ERRED AND PREJUDICED THE DEFENDANT FINDING A PATTERN IN THE DEFENDANTS [sic] BEHAVIOR.

{¶ 30} In her fourth assignment of error, Hilfinger argues the trial court erred by finding she engaged in a "pattern of conduct" rather than "one single event." But, as noted above, the record indicates Hilfinger intentionally shined a bright light into the Mathers' bedroom window late at night and, hours later, repeatedly caused her car horn to sound by pressing the lock button on her key fob. The trial court determined that this was a pattern of conduct. We agree. "A pattern of conduct requires only two or more actions closely related in time." *Harnar*, 2021-Ohio-784 at ¶ 8, citing R.C. 2903.211(D)(1). That is exactly what we have here. Therefore, because we find no error in the trial court's decision finding Hilfinger had engaged in a "pattern of conduct" rather than "one single event," Hilfinger's fourth assignment of error lacks merit and is overruled.

**Conclusion**

{¶ 31} For the reasons outlined above, and finding no merit to any of Hilfinger's arguments raised herein, the trial court's decision granting Mrs. Mather's petition for a civil stalking protection order against Hilfinger in accordance with R.C. 2903.214(C)(1) is affirmed.

{¶ 32} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.