[Cite as *Total Quality Logistics v. Sallah*, 2024-Ohio-2529.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


TOTAL QUALITY LOGISTICS, LLC,     :

       Appellee,                   :          CASE NO. CA2023-11-074

                                        :          O P I N I O N

       - vs -                                    7/1/2024

                                        :

SALLAH, INC.,                            :

       Appellant.                 :


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2021 CVH 0167


Anastos Law LLC, and Thomas L. Anastos, for appellant.

Giles & Harper, LLC, and Brian T. Giles, for appellee.


**PIPER, J.**

{¶ 1} Appellant, Sallah Inc. ("Sallah Trucking"), appeals the trial court's decision in favor of appellee, Total Quality Logistics (TQL"). For the reasons detailed below, we affirm.

## Factual Background

{¶ 2} TQL is a freight broker that contracts with motor carriers to haul cargo for its customers. Sallah Trucking, owned by Momodou Sallah, is a motor carrier. The

parties operate under a broker-carrier agreement, which outlines the terms and conditions of their business relationship. Paragraph four of the broker-carrier agreement provides for the rates to be mutually agreed upon and reduced to a writing referred to as a "rate confirmation." It also allows for TQL to offset pending invoices with amounts owed to TQL for cargo losses.

{¶ 3} The record shows that Sallah Trucking used independent dispatchers to find loads it could transport for TQL. One such dispatcher was William McClendon ("McClendon"), who also goes by "Bill."

{¶ 4} As relevant here, TQL was contacted by its customer, Nestle, for the transportation of a load of dry grocery goods from a location in McDonough, Georgia to a location in Medley, Florida. TQL and Sallah Trucking entered into a written rate confirmation to transport the load for $1,700. The rate confirmation was signed electronically by "Bill" (McClendon) on behalf of Sallah Trucking. The rate confirmation was emailed to Momodou's email address, SallahInc@gmail.com, and to an email address used by McClendon, SallahIncDispatch@gmail.com. The load was picked up from the location in McDonough, Georgia by Sallah Trucking's driver, Alan Kennedy, who signed the bill of lading on behalf of Sallah Trucking. There is no dispute that the tractor and loaded trailer were stolen sometime thereafter and the cargo did not reach its intended destination.

{¶ 5} Since delivery was unsuccessful, Nestle submitted a cargo loss claim to TQL in the amount of $88,944.29. TQL paid Nestle for the cargo loss and in exchange received a written release and assignment of claims. Pursuant to the terms of the broker-carrier agreement, TQL offset some of the cargo losses with amounts TQL owed Sallah Trucking on open invoices. TQL then demanded Sallah Trucking pay it $74,154.56, which Sallah Trucking refused to do.

**Complaint and Bench Trial**

{¶ 6} On February 24, 2021, TQL filed a complaint asserting claims against Sallah Trucking for breach of contract, unjust enrichment, quantum meruit, breach of bailment, as well as a claim under the Carmack Amendment. Sallah Trucking filed an answer along with a counterclaim seeking $14,789.73, the amount of the open invoices TQL used to offset its losses.

{¶ 7} The matter proceeded to a bench trial before a magistrate. The critical issue at trial was whether McClendon had authority to bind Sallah Trucking to the rate confirmation.

{¶ 8} TQL presented testimony from Marc Bostwick, the Risk Manager at TQL, who testified about TQL's business practices, including how TQL conducts its normal course of business. Bostwick testified and presented evidence that Sallah Trucking regularly invoiced TQL for loads arranged by McClendon. Bostwick identified Exhibit I, which was a spreadsheet of information maintained by TQL showing historical load information between TQL and Sallah Trucking from January 2017 until August 2018. The exhibit showed that McClendon had arranged 47 of the 96 loads between TQL and Sallah Trucking between May 2017 and the final (stolen) load arranged in August 2018. It was not until after the cargo loss that Sallah Trucking asserted McClendon lacked authority to enter into rate confirmations.

{¶ 9} Sallah Trucking's owner, Momodou, testified that McClendon did not have authority to bind Sallah Trucking to rate confirmations. However, Momodou acknowledged that he had a special arrangement where he would pay McClendon $50 for each load McClendon arranged with TQL. Momodou also testified that he was aware McClendon used the email address SallahIncDispatch@gmail.com from communications he had with him in the past. Nevertheless, Momodou insisted that McClendon needed to

secure additional approval from him to bind the company to a rate confirmation.

{¶ 10} The magistrate took the matter under advisement and issued findings of fact and conclusions of law. The magistrate found that McClendon had apparent authority to bind Sallah Trucking to rate confirmations, and therefore ruled in favor of TQL. Sallah Trucking filed objections, which the trial court overruled.[1] The trial court found the magistrate's decision was supported by competent and credible evidence and concluded that Sallah Trucking was liable for the cargo loss. Sallah Trucking now appeals, raising one assignment of error for review:

{¶ 11} THE TRIAL COURT ERRED IN OVERRULING SALLAH, INC.'S OBJECTIONS TO THE MAGISTRATE'S DECISION.

{¶ 12} In its sole assignment of error, Sallah Trucking argues the trial court erred by finding that McClendon had apparent authority to bind Sallah Trucking to the rate confirmation. Sallah Trucking's argument is a challenge to the weight of the evidence presented at trial.

### Standard of Review

{¶ 13} The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case. *Dunn v. Clark*, 2016-Ohio-641, ¶ 8 (12th Dist.). In considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal. *Hacker v. House*, 2015-Ohio-4741, ¶ 21 (12th Dist.).

{¶ 14} "[E]very reasonable presumption must be made in favor of the judgment

---

1. The trial court modified the damage award slightly after concluding the magistrate had made a miscalculation.

and the finding of facts." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21.  "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the * * * judgment."  *Id.*  Moreover, "where the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." *Chasteen v. Dix Road Property Mgt. L.L.C.*, 2021-Ohio-463, ¶ 43 (12th Dist.).

## Apparent Authority

**{¶ 15}**  "In order for a principal to be bound by the acts of its agent under the guidelines of apparent authority, the evidence must affirmatively show '(1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.'" *Ringhand v. Chaney*, 2014-Ohio-3661, ¶ 12 (12th Dist.), quoting *Master Consolidated Corp. v. BancOhio Natl. Bank*, 61 Ohio St. 3d 570, 576-577 (1991).

**{¶ 16}**  Following review, we find the trial court's decision is supported by the manifest weight of the evidence and the trial court did not err by overruling Sallah Trucking's objections to the magistrate's decision.  In the present case, the record showed that Sallah Trucking used third-party dispatchers, including McClendon, to bind it to rate confirmations between Sallah Trucking and TQL.[2]  The exhibit identified by Bostwick

---

2. Paragraph four of the broker-carrier agreement states:

> CARRIER agrees to perform Services for BROKER, under CARRIER's Operating Authority exclusively, at a rate mutually agreed upon in writing in a TQL Rate Confirmation ("Rate Confirmation"), which shall be incorporated into this Agreement.

showed that McClendon had arranged 47 of the 96 loads between TQL and Sallah Trucking between May 2017 and the final (stolen) load arranged in August 2018.

**{¶ 17}** Bostwick testified that after a load is successfully transported, the carrier submits an invoice to TQL with the terms set forth in the rate confirmation, along with the bill of lading, and TQL remits payment at that point. TQL does not pay the carrier until the carrier sends that invoice. Bostwick confirmed that Sallah Trucking was paid for each load it ran except for the loads used to offset damages for the cargo loss. Thus, Sallah Trucking had to have known that McClendon was entering into rate confirmations on its behalf. If Sallah Trucking had not invoiced TQL for the loads arranged by McClendon, Sallah Trucking would not have been paid for the loads it transported. In other words, the record showed, at the very least, that Sallah Trucking approved or ratified McClendon's authority to enter into these rate confirmations.

**{¶ 18}** Sallah Trucking argued to the contrary claiming that McClendon had no authority to bind it to rate confirmations. Momodou presented his own testimony. However, in so doing, Momodou aided TQL's argument by acknowledging the special arrangement with McClendon and admitting he knew McClendon communicated with the email address SallahIncDispatch@gmail.com. On appeal, Sallah Trucking raises a number of conclusory arguments, and reweighs the evidence presented at trial. Sallah Trucking attempts to discredit Bostwick by claiming Bostwick did not have personal knowledge of the transactions or interactions between TQL and Sallah Trucking. Sallah Trucking further argues that there was a deficiency in the evidence and that the trial court failed to appropriately consider the evidence in light of the test for apparent authority.

**{¶ 19}** However, we find Sallah Trucking's arguments to the contrary to be without merit. Bostwick was not required to have firsthand knowledge of any particular transaction or interaction with Sallah Trucking. Bostwick was testifying about information

generated by TQL in the ordinary course of business. *See Citibank, N.A. v. Ebbing*, 2013-Ohio-4761, ¶ 21 (12th Dist.); *Cent. Mtge. Co. v. Bonner*, 2013-Ohio- 3876, ¶ 16 (12th Dist.).

**{¶ 20}** The evidence showed that Sallah Trucking regularly used dispatchers, including McClendon, to bind it to rate confirmations. Sallah Trucking had been using McClendon to enter into rate confirmations since May 2017, lasting until the stolen load in August 2018. Sallah Trucking was paid for each load it transported, including those arranged by McClendon, by invoicing TQL after it successfully delivered each load. Knowing these facts, TQL acted in good faith on the understanding that McClendon had the necessary authority to bind Sallah Trucking to rate confirmations. If Sallah Trucking had concerns about McClendon entering into rate confirmations on its behalf, it had ample opportunities to let TQL know that McClendon possessed no such authority. In fact, Bostwick testified that TQL has procedures in place should a carrier inform it that it no longer wanted to do business with certain drivers or dispatchers.

**{¶ 21}** Sallah Trucking's appeal is merely an attempt to reframe the evidence submitted in a light more favorable to its claims. However, the trier of fact was in the best position to observe the witnesses and weigh the credibility of the evidence. *Smith-Knabb v. Vesper*, 2023-Ohio-259, ¶ 30 (12th Dist.). In this case, the trial court's decision was supported by competent and credible evidence. That is, the evidence affirmatively showed that (1) Sallah Trucking held McClendon out to the public as possessing sufficient authority to bind Sallah Trucking to rate confirmations, or, at least, knowingly permitted McClendon to act as having that authority, and (2) TQL knew of the facts and acting in good faith had reason to believe that McClendon possessed the necessary authority. *See Ringhand*, 2014-Ohio-3661 at ¶ 12-16. Accordingly, we find the judgment is supported by the manifest weight of the evidence and the trial court did not err by overruling Sallah

Trucking's objections to the magistrate's decision.

**{¶ 22}** Sallah Trucking raises a second issue for review at the end of its brief asserting that it is entitled to judgment on its counterclaim. However, because the amount requested in Sallah Trucking's counterclaim was used to offset the total amount due to TQL, the trial court appropriately denied the counterclaim. The offsetting of claims was specifically agreed to, as stated in paragraph four of the broker-carrier agreement.[3] *See Godoy v. Total Quality Logistics, L.L.C.*, 2023-Ohio-4585, ¶ 57 (12th Dist.). Sallah Trucking's sole assignment of error is overruled.

**{¶ 23}** Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.

---

3. Paragraph four of the broker-carrier agreement also states:

> Notwithstanding any other provision in this Agreement to the contrary, BROKER may offset against CARRIER's pending invoices for any amounts due to BROKER, including, without limitation, those arising from or related to cargo claims, CARRIER's breach of this Agreement, or CARRIER's indemnity obligations to BROKER or CUSTOMERS.